UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CLARA RUPLINGER, | Plaintiff, |
| v. | Civil Action No. 3:19-cv-583-DJH-RSE |
| LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT et al., | Defendants. |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Clara Ruplinger was arrested for protesting on July 26, 2018. (Docket No. 1-3, PageID # 12)  Ruplinger alleges that she was improperly required to remove her headscarf during the booking process, and she filed this action in state court alleging violations of the First Amendment, the Religious Land Use and Institutionalized Persons Act, and the Kentucky Religious Freedom Restoration Act.  (*Id.*, PageID # 13–14)  Defendants removed the matter to federal court (D.N. 1) and then filed a motion to dismiss for failure to state a claim.  (D.N. 4)  The motion was administratively remanded pending consideration by the Kentucky Supreme Court of a certified question relevant to the issues discussed below.  (D.N. 20)  Having received the opinion of the Kentucky Supreme Court (D.N. 23), this matter is now reinstated for full consideration.  For the reasons explained below, the Court will grant Defendants' motion to dismiss as to Louisville Metro Department of Corrections but deny the remainder of Defendants' motion.

**I.**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a Rule 12(b)(6) motion."  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed R. Civ P. 12(b)(6)).  Plaintiff Clara Ruplinger participated in a protest at the Department of Justice Immigration Court in Louisville, Kentucky, against the practices of the

1

United States Immigration and Customs Enforcement agency on July 26, 2018. (D.N. 1-3, PageID # 12) Ruplinger and some of her fellow protesters were arrested on misdemeanor charges and transported to the main-jail complex operated by Defendant Louisville Metro Department of Corrections. (*Id.*)

At the jail, a group of female officers conducted an initial search of Ruplinger and asked her to remove her headscarf as part of the search. (*Id.*, PageID # 13) Ruplinger complied because "removal of her headscarf in the presence of only members of her sex and/or gender did not interfere with the principles of hijab sincerely held by" Ruplinger. (*Id.*) After the officers determined that Ruplinger had no contraband, she was allowed to put her headscarf on before she was moved to the inmate booking area, which held fifty to sixty people. (*Id.*)

For the next part of the booking process, officers had to photograph Ruplinger for identification purposes. (*Id.*) In the first photo, Ruplinger was permitted to wear her headscarf, but officers then informed Ruplinger that she needed to retake the booking photograph without her headscarf. (*Id.*) Although Ruplinger told the officers that removing her headscarf in the presence of men would violate her religious beliefs, the officers insisted that it must be removed, with one officer telling Ruplinger that it was a requirement "to generate a booking photograph without the headscarf in order to record [her] 'proper head dimensions.'" (*Id.*, PageID # 14) At least four officers took part in the conversation with Ruplinger, and eventually she complied with the demands and removed her headscarf in violation of her sincerely held beliefs. (*Id.*) Approximately eight hours after she arrived, Ruplinger was released on her own recognizance. (*Id.*, PageID # 14–15)

After she was released, LMDC published Ruplinger's booking photograph without her headscarf to a searchable online database hosted by Defendant Louisville Metro Government. (*Id.*,

PageID # 15) As a result, a number of media outlets obtained the photo, and there is now a record online depicting Ruplinger in a manner inconsistent with her sincerely held religious beliefs. (*Id.*) At the time of the complaint's filing, the photo was still published on the online database. (*Id.*, PageID # 17)

In response to correspondence from Ruplinger, that Ruplinger referred to in the complaint and attached to her response to the motion to dismiss, Defendants' counsel identified two relevant LMDC policies: Policy 01-5.15 and BF-05. (*Id.*, PageID # 16) The first states that "[a]dmission processes for a newly-admitted inmate include, but are not limited to: . . . [p]hotographing and fingerprinting, including notation of identifying marks or other unusual physical characteristics." (*Id.*) The second states: "Once the Demographic Detail is complete, access Capture Mug Shot to take the inmate's photograph, including pictures of any scar, marks and/or tattoos without compromising the inmate's privacy (i.e. revealing private areas)." (*Id.*) Contrary to the officer's assertions that the second photograph was necessary to capture Ruplinger's "proper head dimensions," Defendants' counsel explained that LMDC policy actually required Ruplinger to remove her headscarf in the second photograph so that officers could "photograph all scars, marks, and/or tattoos" for identifying purposes. (*Id.*, PageID # 15) Defendants' counsel also represented that it was the practice of LMDC to "require the removal of any head coverings for detainees," which included headscarves. (*Id.*, PageID # 15–16)

Ruplinger brought this case against Louisville Metro Government, Louisville Metro Department of Corrections, and three municipal officers in their official capacities. (*Id.*, PageID # 9) She alleges that there was an official policy that required removal of her headscarf and that the policy violated the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act, and the Kentucky Religious Freedom Restoration Act. (*Id.*, PageID

3

# 17–26) In support of their motion to dismiss, Defendants assert the defense of sovereign immunity and argue that Ruplinger has failed to allege the existence of a municipal policy that caused the alleged violations. (D.N. 4-1, PageID # 38–41)

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**A.     Proper Defendants**

Defendants argue that LMDC must be dismissed because it is not a legal entity capable of being sued. (D.N. 4-1, PageID # 37) LMDC is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 U.S. App. LEXIS 28072, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, Louisville Metro Government is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990).

Further, Louisville Metro Government is a "person" for the purposes of § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Since Louisville Metro Government is a named defendant in this case, the Court will dismiss all claims against LMDC.

In addition, Ruplinger has named three defendants in their official capacities. "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (quoting *Monell*, 436 U.S. at 691). Thus, to the extent Ruplinger has sued Mayor Greg Fischer, Mark Bolton, and Doug Hamilton in their official capacities, she has sued the Louisville Metro Government and the Louisville Metro Department of Corrections. *See Barnett v. Louisville Metro Police Dep't*, No. 3:13-cv-32-S, 2013 U.S. Dist. LEXIS 183785, at *21–22 (W.D. Ky. Sept. 18, 2013) (adopted by 2014 U.S. Dist. LEXIS 6076 (W.D. Ky. Jan. 16, 2014)). Municipal departments, such as the Louisville Metro Department of Corrections, are not subject to suit under § 1983. *Matthews v. Louisville Metro Police Dep't*, No. 3:19-cv-581-RGJ, 2019 U.S. Dist. LEXIS 184648, at *3–*4 (W.D. Ky. Oct. 24, 2019) (citing *Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991)). These claims are properly characterized as claims against Louisville Metro Government. *Smallwood*, 743 F. Supp. at 503. The Court will therefore dismiss all claims against Mayor Greg Fischer, Mark Bolton, and Doug Hamilton in their official capacities. As a result, the Court will only refer to Louisville Metro Government when addressing Ruplinger's claims.

**B.     Sovereign Immunity**

    **1.     § 1983 Claim**

Louisville Metro Government asserts that Ruplinger's § 1983 claim must be dismissed on the basis of sovereign immunity under the Eleventh Amendment. (D.N. 4-1, PageID # 38) "The Eleventh Amendment has long been interpreted to bar federal courts from exercising jurisdiction

5

over actions against a state brought by her own citizens." *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Although § 1983 does not abrogate Eleventh Amendment immunity, that immunity "does not extend to counties and similar municipal corporations." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Louisville Metro Government is a municipality that is not protected by Eleventh Amendment immunity.[1] *See Troutman v. Louisville Metro Dep't of Corrections*, 979 F.3d 472, 489 (6th Cir. 2020) (analyzing Louisville Metro Government's potential liability under § 1983).

    **2.    RLUIPA Claim**

Louisville Metro Government argues that the Eleventh Amendment also shields it from Ruplinger's money-damages and punitive-damages claims under RLUIPA. (D.N. 4-1, PageID # 38) A plaintiff who brings a successful claim under RLUIPA may "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The Supreme Court has determined that RLUIPA's relief provision does not constitute a waiver of Eleventh Amendment immunity. *Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011); *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). Following *Sossamon*, the Sixth Circuit concluded that RLUIPA also does not authorize money-damages suits against officials in their individual capacities. *Haight v. Thompson*, 763 F.3d 554, 568–69 (6th Cir. 2014). This led one district court to conclude that, by the same logic, RLUIPA does not authorize a money-damages suit against a county or

---

[1] Even though Louisville Metro Government is not entitled to Eleventh Amendment immunity, it is not subject to punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981). Ruplinger's § 1983 claim therefore cannot serve as a basis for her request for punitive damages.

municipality. *Eidam v. Cnty. of Berrien*, 1:19-cv-978, 2019 WL 7343354, at *8 (W.D. Mich. Dec. 31, 2019).

The Supreme Court, however, recently clarified the logic underlying the *Sossamon* decision. *Tanzin v. Tanvir*, 141 S. Ct. 486, 492–93 (2020). While addressing a claim under the Religious Freedom Restoration Act, which contains an identical "appropriate relief" clause, the Court concluded that RFRA allows money-damages suits against officials in their individual capacities. *Id.* at 492. The Court explicitly stated that this decision was not in conflict with *Sossamon* because that case concerned entities protected by the Eleventh Amendment, and the Eleventh Amendment does not bar individual-capacity suits. *Id.* at 492–93. In the absence of guidance from the Sixth Circuit about how *Tanzin* affects the holding in *Haight*, the Court will follow the analysis set out in *Tanzin*. Since Louisville Metro Government is not protected by Eleventh Amendment immunity, *see Boler*, 865 F.3d at 410, the *Sossamon* decision does not bar Ruplinger's money-damages claim or punitive-damages claim under RLUIPA.

### 3. KRFRA Claim

While the Court evaluates sovereign immunity from federal claims under the Eleventh Amendment, the Court analyzes Kentucky law to determine sovereign immunity from state-law claims. *See Thieneman v. Smith*, No. 3:17-cv-292-DJH, 2018 U.S. Dist. LEXIS 51272, at *11 (W.D. Ky. Mar. 26, 2018) (citing *Reyes v. Salsman*, No. 3:15-cv-587-GNS-DW, 2016 U.S. Dist. LEXIS 6435, at *2 (W.D. Ky. Jan. 20, 2016)) ("Under Kentucky law, it is well established that claims against counties are barred by sovereign immunity."). "While Louisville Metro Government is not a county, it is a consolidated government." *Id.* "Under KRS 67C.101(2)(e), the Kentucky General Assembly has expressly granted to consolidated governments 'the same sovereign immunity granted to counties, their agencies, officers, and employees.'" *Reyes*, 2016

U.S. Dist. LEXIS 6435, at *5; *see also Jackson v. Jernigan*, No. 3:16-cv-750-JHM, 2017 U.S. Dist. LEXIS 71965, at *41 (W.D. Ky. May 11, 2017) (citing *Yanero v. Davis*, 65 S.W.3d 510, 517–18 (Ky. 2001)) ("The same sovereign immunity that shields . . . Louisville Metro as [a] municipalit[y] also protects the Commonwealth, as the sovereign immunity of a municipality derives from the state.").

In light of Louisville Metro Government's sovereign immunity from state-law claims, Ruplinger argues that the General Assembly waived that immunity when it enacted the Kentucky Religious Freedom Restoration Act. (D.N. 9, PageID # 66) Because this was a question of first impression, the Court certified the question to the Kentucky Supreme Court. (D.N. 19, PageID # 159) The Kentucky Supreme Court considered the question and concluded that KRFRA includes no express waiver of sovereign immunity. *In re Ruplinger v. Louisville/Jefferson Cnty. Metro Gov't*, 607 S.W.3d 583, 585–86 (Ky. 2020). As a result, Ruplinger "is limited to a potential declaratory judgment enjoining Louisville/Jefferson County Metro Government . . . if she can prove a violation of KRFRA." *Id.* at 585.

**C.     Municipal Policy**

Ruplinger brings claims against Louisville Metro Government under § 1983, RLUIPA, and KRFRA. (D.N. 1-3, PageID # 17–26) Although these claims arise under different statutory frameworks, Louisville Metro Government raises only one substantive argument against all three claims: that Ruplinger has failed to adequately plead that an official municipal policy led to the alleged violation of her rights. (D.N. 4-1, PageID # 41–45) Ruplinger must establish the existence of an official policy for each of her claims. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (§ 1983); *Koger v. Mohr*, 964 F.3d 532, 539 (6th Cir. 2020) (quoting *Haight*, 763 F.3d at 559–60) (RLUIPA); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612–13 (6th

8

Cir. 2020) (noting that KRFRA parallels RLUIPA and similar state statutes). The Court will therefore consider the RLUIPA and KRFRA claims alongside the § 1983 claim.

Ruplinger brings a § 1983 claim for violation of her First Amendment rights under the Free Exercise Clause. (D.N. 1-3, PageID # 17–19) To prevail on a § 1983 claim, "a plaintiff must show that [s]he was deprived of rights guaranteed under the United States Constitution or federal law by a person acting 'under color of state law.'" *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016) (quoting *Strickland ex rel. Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997)). When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: "(1) whether the plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The municipality is not liable for harm "inflicted solely by its employees or agents"; it is only liable when an official policy or custom of the municipality caused the alleged violation of rights. *Thomas*, 398 F.3d at 429. The Sixth Circuit has identified four ways a plaintiff may prove the existence of a municipality's illegal policy or custom: "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* "Official policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 569, 480–81 (1986)).

For purposes of the motion to dismiss, Louisville Metro Government concedes that removing Ruplinger's headscarf in front of members of the opposite sex violated Ruplinger's

9

sincerely held religious beliefs; it argues only that Ruplinger has failed to adequately allege that there was an official policy or custom that caused the violation. (D.N. 4-1, PageID # 42) To support this argument, Louisville Metro Government asserts that the correspondence from its counsel is inadmissible under Federal Rule of Evidence 408. (D.N. 11, PageID # 101–02) As an initial matter, it is not clear that the correspondence from defense counsel concerns a compromise negotiation. Fed. R. Evid. 408(a)(2). Although in response to a letter styled as "FRE 408 Confidential Communication," the letter from defense counsel makes no such indication and never mentions a possible negotiation of Ruplinger's claim. (D.N. 9-1, PageID # 85) Further, it appears that Ruplinger is not offering the correspondence to prove the validity of Ruplinger's claim. Fed. R. Evid. 408(a). Ruplinger does not assert that the correspondence from defense counsel constitutes an admission that Louisville Metro Government violated her rights. Instead, she offers the correspondence to define the meaning of a public policy, which would be "another purpose" for offering the correspondence, making the correspondence admissible under Rule 408(b). (D.N 1-3, PageID # 15)

Even if the correspondence could come within the purview of Rule 408, at the motion-to-dismiss stage, the Court assumes the veracity of the allegations and simply considers whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Based on the facts of this case, the Court finds it is not appropriate to take up the admissibility of the correspondence at this stage, consistent with its obligation to accept all facts as true. *Siefert*, 951 F.3d at 757; *see also John Keeler & Co., Inc. v. Heron Point Seafood, Inc.*, 2017 WL 3705863, at *4 (N.D. Ohio Aug. 28, 2017) ("Moreover, since a 12(b)(6) ruling is not a judgment on the merits, the court will not determine whether there is sufficient *proof* that the accused product was distributed in the United States.") (emphasis in original).

To support her claim, Ruplinger asserts the following facts: (1) an officer informed her that LMDC "was required to generate a booking photograph without the headscarf in order to record [her] 'proper head dimensions'" (D.N. 1-3, PageID # 14); (2) counsel for Louisville Metro Government informed Ruplinger via letter that although the written policies did not state that she would have to remove her scarf, such policies required "the removal of any head coverings for detainees, which included [Ruplinger's] headscarf" (*id.*, PageID # 15–16); and (3) Louisville Metro Government published the photo of Ruplinger without her headscarf. (*Id.*, PageID # 15) Accepting these factual allegations as true, the Court can draw a reasonable inference that Louisville Metro Government had a "fixed plan of action" that required Ruplinger to remove her headscarf in violation of her sincerely held religious beliefs. *Iqbal*, 556 U.S. at 778; *Spears*, 589 F.3d at 256. These factual assertions also support a reasonable inference that if the official policy required the booking photograph to contain no head coverings, it would also require the published booking photograph to meet the same requirements. *Iqbal*, 556 U.S. at 778. Since Ruplinger has pleaded sufficient factual matter for the Court to reasonably infer that Louisville Metro Government had an official policy that caused her alleged constitutional violation, all three of Ruplinger's claims may proceed.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (D.N. 4) is **GRANTED** as to Louisville Metro Department of Corrections, Mayor Greg Fischer, Mark Bolton, and Doug Hamilton.  The Clerk of Court is **DIRECTED** to terminate Louisville Metro Department of Corrections, Mayor Greg Fischer, Mark Bolton, and Doug Hamilton as defendants in the record of this matter.  The motion to dismiss is **DENIED** in all other respects.  Further, the Court requests that Magistrate Judge Regina S. Edwards set a status conference and establish a revised litigation plan.

February 22, 2021

David J. Hale, Judge
United States District Court